IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**Jeannie Melillo** on behalf of herself and
all others similarly situated,
       Plaintiff,

v.                 Case No. 4:23-cv-00464-BRW

**Centennial Bank d/b/a Happy State Bank,**
       Defendant.

## **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE**

Defendant Centennial Bank d/b/a Happy State Bank ("Happy State Bank" or "Defendant"), by and through its undersigned counsel, hereby submits this Brief in support of its Motion to Dismiss And Strike Plaintiff Jeannie Melillo's Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f).

**I. Introduction**

Plaintiff Jeannie Melillo ("Plaintiff") has not been the victim of identity theft. There are no allegations in the Class Action Complaint ("Complaint") that cybercriminals used her personal information to commit fraud or in furtherance of any other type of nefarious scheme. Further, the Complaint is silent as to whether Plaintiff suffered any type of economic harm stemming from the data security incident suffered by Defendant. Accordingly, Plaintiff has not suffered any injuries-in-fact and does not have standing to bring this putative class action lawsuit under Article III of the United States Constitution. The Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Even if Plaintiff had standing to pursue this lawsuit, she failed to plead sufficient facts to state a claim for any of the causes of action asserted in the Complaint. The Complaint should therefore also be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Finally, if the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case pursuant to Rule 12(f).

## II.     Relevant Factual Allegations[1]

Defendant Happy State Bank is an Arkansas-based corporation that provides banking and other financial services to its customers. Compl. ¶ 14. In July 2022, Happy State Bank discovered it experienced a cyber incident pertaining to a former employee's email account, and through its thorough investigation, determined that certain documents may have been compromised (the "Data Security Incident"). *Id*. at ¶¶ 2 – 4. In March 2023, Happy State Bank began notifying potentially affected individuals about the Data Security Incident. *Id*. at ¶ 31. Happy State Bank is still unaware of any actual or attempted misuse of any of the affected information as a result of this Incident.

Plaintiff Jeannie Melillo is a customer of Defendant. *Id*. at ¶ 19. Plaintiff is a Texas resident. *Id*. at ¶ 14. Plaintiff initiated this action on behalf of herself and on behalf of a proposed nationwide class of "[a]ll persons whose private Information was actually or potentially accessed or acquired by an unauthorized party as a result of the Data Breach reported by Defendant on or about March 16, 2023 (the "Class")." *Id*. at ¶ 115.

Plaintiff alleges that she provided her personally identifiable information ("PII") to Happy State Bank to receive banking and financial services and that Defendant failed to adequately secure

---

[1] For the purposes of this motion only, all well-pleaded facts of Plaintiff's Complaint are treated as true. However, Happy State Bank does not admit the truth of any allegations in the Complaint and cites them here solely for purposes of this motion.

that information. *Id*. at ¶¶ 26, 35 – 39, 131. Plaintiff initiated this suit alleging she "received oral notification that [ ] her PII was involved" in the underlying Data Security Incident. *Id*. at ¶ 40. Plaintiff, however, has not pled any facts in her Complaint that suggests she suffered any harm from the Data Security Incident. Specifically, there are no facts in the Complaint that show Plaintiff experienced identity theft, fraud, or any other concrete harm, and Plaintiff does not have any damages.

### III.    Legal Argument

#### A.  Plaintiff's Claims should be Dismissed for Lack of Article III Standing

Plaintiff failed to sufficiently plead any factual basis establishing that she suffered concrete injuries-in-fact sufficient to give rise to standing under Article III of the United States Constitution. The Court should therefore dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

#### 1.   Plaintiff Bears the Burden to Show Standing Exists

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. To have standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id*. at 560.

"A case is properly dismissed for lack of subject matter jurisdiction when [a federal] court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted). "As the

party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion, LLC v. Ramirez,* 141 S. Ct. 2190, 2207 (2021). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation," including at the pleading stage. *Lujan*, 504 U.S. at 561.

### 2. Plaintiff Must Show Injuries-in-Fact

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 330 – 331 (quoting *Lujan*, 504 U.S. at 560 n.1).

As for concreteness, "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal citations and quotation marks omitted). In other words, it must be "real, and not abstract." *Id.* (internal citations and quotation marks omitted). Because an injury-in-fact cannot be conjectural or hypothetical, mere "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion*, 141 S. Ct. at 2203.

### 3. Plaintiff Does Not Have Article III Standing to Seek Damages

Plaintiff failed to carry her burden to establish standing to pursue this case under Article III. According to the allegations in the Complaint, Plaintiff has not suffered any actual injury, such as identity theft. Because a plaintiff must have already suffered an injury-in-fact in order to have Article III standing in a case for damages, Plaintiff's claims should be dismissed.

Plaintiff does not allege that she was a victim of identity theft, financial fraud, or any other actual realized harm. Instead, she alleges that she at a "substantially increased risk of fraud, identity

4

theft, and misuse…" as a result of the underlying Data Security Incident. Compl. ¶ 43. A "risk" of identity theft is not identity theft or fraud. Simply put, Plaintiff failed to allege any risk of future harm that can confer standing. In *TransUnion*, *supra*, 141 S. Ct. at 2211, the Supreme Court clarified the standard that a plaintiff must meet when seeking to establish standing on the basis of a potential future injury. In assessing whether the risk of future harm can constitute an injury-in-fact under Article III, the Supreme Court distinguished between claims seeking injunctive relief and claims seeking monetary damages, finding that in a suit for damages, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. Instead, the Court held that a plaintiff must show that the harm actually materialized. *Id*.

In reaching its conclusion, the Supreme Court likened the statutory violation underlying the *TransUnion* plaintiffs' claimed injuries to the common law tort of defamation and explained that "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id*. at 2209 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). In rejecting the argument that risk of future disclosure of a credit report could serve as a concrete harm constituting an injury-in-fact satisfying Article III, the Supreme Court agreed with the argument TransUnion advanced:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*TransUnion*, 141 S. Ct. at 2211 (emphasis in original). Similarly, in this case, Plaintiff alleged that her personal information may have been accessible without authorization during the Data Security

Incident, but no allegations of concrete injury exist until it can be proven that information was actually misused in some way.

The Supreme Court's Article III standing analysis in *TransUnion* comports with Eighth Circuit precedent in data breach class actions. In a case brought by customers whose financial information was exposed in two cyberattacks on a grocery store chain, the Eighth Circuit held that simply having information exposed in a data breach was insufficient to establish a "certainly impending" or "substantial risk" of future identity theft that would result in concrete injury-in-fact for standing purposes. *In re SuperValu, Inc.*, 870 F.3d 763, 771–72 (8th Cir. 2017). Although the plaintiffs alleged "that, on information and belief, illicit websites are selling their Card Information to counterfeiters and fraudsters, and that plaintiffs' financial institutions are attempting to mitigate their risk," the Eighth Circuit found these allegations to be "speculative" and concluded there was "little to no risk" that the plaintiffs should suffer identity theft. *Id*. at 770.

While *In re SuperValu* involved only financial information at issue, a court in this district recently determined in a data breach class action involving unauthorized access to Social Security numbers, that the plaintiffs' "additional allegation that their SSNs were compromised" did not sufficiently distinguish their case from *In re SuperValue* because the plaintiffs did not plead factual material showing a certainly impending or substantial risk of identity theft. *Pulliam v. West Technology Group, LLC*, 2024 WL 356777, at * 6 (D. Neb. Jan. 24, 2024) ("Like in *SuperValu*, in the present case, 'pursuant to the factual evidence relied on in the complaint,' Plaintiffs have not alleged that 'there is [substantia] risk that anyone will use the [Private] information stolen in these data breaches to open unauthorized accounts in the plaintiffs' names.'") (quoting *SuperValu*, 870 F.3d at 770).

6

As the Western District of Oklahoma noted, "[g]iven the holding in *TransUnion*, it is far from clear that any case finding a concrete injury based merely on an abstract risk of future identity theft following a data breach is still good law, at least with respect to a claim for damages." *Legg v. Leaders Life Ins. Co.*, 574 F.Supp.3d 985, 993 (W.D. Okla. 2021). In data privacy class actions since *TransUnion*, courts have found plaintiffs lack Article III standing where their purported injuries-in-fact consist of the risk of future identity theft. *See id.* (dismissing case where "Plaintiff only pleads facts showing that there is a non-imminent risk of possible future injury following the data breach, [which] is not sufficient to confer standing"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *10 (D.N.J. Dec. 16, 2021) (dismissing claims brought by plaintiffs alleging risk of future identity theft who "fail to account for . . . the Supreme Court's recent admonition that an unmaterialized risk of future of harm cannot confer standing in a claim for damages").

Like the plaintiffs in *SuperValu* and *Pulliam*, here Plaintiff fails to allege a present, concrete injury or other already-materialized harm stemming from Defendant's Data Security Incident, and her allegations of risk of future harm, standing alone, are insufficient to confer standing.

### 4. Mitigation Efforts do not Establish an Injury-in-Fact under Article III

Attempting to allege some type of redressable injury, Plaintiff also claims she was forced to spend time and money on mitigation efforts related to the risk of identity theft. But if the risk of future identity theft itself cannot establish standing, Plaintiff cannot manufacture standing by incurring self-imposed costs.

Although Plaintiff generally alleges that she has suffered and will continue to suffer out-of-pocket expenses, loss of time and productivity from mitigation efforts, she has not included any

specific factual allegations pertaining to how she incurred any out-of-pocket expenses or how she "lost time" through these alleged mitigation efforts. Compl. ¶¶ 41 – 46, 159. Even if she had included such allegations, however, a plaintiff cannot "manufacture standing" simply by "incur[ing] certain costs as a reasonable reaction to a risk of harm." *Clapper*, 568 U.S. at 416. "Thus, while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury" sufficient to confer standing to seek damages. *Legg*, 574 F.Supp.3d at 994. Here, where the harm of identity theft failed to materialize, Plaintiff cannot use mitigation efforts to create Article III standing where it does not already exist.

### 5. Plaintiff Cannot Show Standing Through Alleged Diminution in Value of Personal Information

Plaintiff also argues that she suffered injuries in the form of "damages to and diminution in the value of her Private Information…" Compl. ¶ 42. Plaintiff has not—and cannot—offer any factual support for this argument.

The decisions that have accepted diminution in value of personal information to establish standing "involved circumstances where the defendants collected information that was itself monetized and used for commercial purposes." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *10. "The [Complaint] here contains no similar allegation. Absent such circumstances, there is no loss of value in the information sufficient to state a concrete injury." *Id.*; *see also Green v. eBay, Inc.*, No. 14-1688, 2015 WL 2066531, n.59 (E.D. La. May 4, 2015) ("Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach."). Plaintiff offered no factual support for the conclusory argument that her information lost value as a result of Defendant's Data Security Incident. Accordingly, she cannot rely on this theory to establish Article III standing.

### B. Plaintiff Fails to State a Valid Claim upon which Relief can be Granted

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

Here, Plaintiff failed to plead sufficient facts to support any of the causes of action set forth in the Complaint and these claims should be dismissed with prejudice.

#### 1. Choice of Law

As an initial matter, the Court must decide which state's law to apply. A federal court sitting in diversity jurisdiction looks to choice of law principles of the forum state. *Hanjy v. Arvest Bank*, 94 F.Supp.3d 1012, 1027 (E.D. Ark. 2015). In situations without a contractual choice of law provision, "Arkansas courts generally apply the 'most significant relationship' test to breach of contract claims." *Id*.  In making this determination, courts consider factors including (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; and (4) the location of the subject matter of the contract; [and] (5) the domicile, residence, nationality,

place of incorporation and place of business of the parties." *Kloeckner Metals Corporation v. Five Rivers Distribution, LLC*, 635 F.Supp.3d 697, 701 (W.D. Ark. 2022) (citing Restatement (Second) of Conflict of Laws 145(2) (1971)).

Here, Plaintiff is a resident of Texas. Compl. ¶ 13. Defendant is an Arkansas-based corporation with its headquarters in Arkansas, and Arkansas is where it became the victim of the cyberattack. *Id*. at ¶ 14. For purposes of this Motion, Defendant applies Arkansas law.

### 2. Plaintiff Fails to State a Claim for Negligence

Plaintiff has not included any factual information in the Complaint that shows that she suffered any damages as a result of Defendant's Data Security Incident. She has, therefore, failed to state a cause of action for negligence.

Under Arkansas law, the elements for a negligence cause of action are (1) the existence of a duty on the part of the defendant to conform to a specific standard of conduct to protect the plaintiff; (2) breach of that duty by the defendant; (3) injury to the plaintiff actually and proximately caused by the defendant's breach; and (4) resulting damages to the plaintiff or her property. *Peregrine Trade, LLC v. Rowe*, 2018 Ark. App. 176, at 17, 546 S.W.3d 518, 529.

Plaintiff does not allege that there is any ongoing, present harm, such as a fraudulent bank account transactions or non-reimbursed fraudulent charges resulting from Defendant's alleged negligence. Nor does Plaintiff allege any specific economic damage. Instead, she relies on the risk of future identity theft, undefined future mitigation expenses relating to identity theft losses or protective measures, lost opportunity costs, and loss of value in her personal information. Compl. ¶¶ 41 – 46, 159.  Future injuries and hypothetical costs that have not yet been incurred do not satisfy the damages element of a negligence claim. Moreover, as the Eighth Circuit has held, "time spent monitoring . . . account information to guard against potential fraud" is not a "cognizable injury" for

10

a negligence cause of action. *SuperValu*, 2018 WL 1189327, at *13; *see also Everhart v. Colonial Pipeline Co.*, No. 21-3559, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022) (finding data breach plaintiff failed to state a negligence claim because (i) diminished value of PII, (ii) out-of-pocket mitigation expenses, (iii) lost opportunity costs, and (iv) increased risk to PII are not "legally cognizable injuries for which damages may be recoverable for a tort such as negligence"). Other circuit courts agree with the Eighth Circuit – speculative future harm is not sufficient for a negligence claim in data breach litigation. *See, e.g., Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (data breach plaintiffs "have not established a cognizable injury for purposes of their negligence claim" because "[t]he alleged injuries here stem from the danger of future harm"); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 367-68 (M.D. Pa. 2015) (no actual injury based on preventative measures taken to prevent future injury in connection with data breach).

Finally, Plaintiff failed to establish any plausible nexus or causation between her alleged injuries and the Data Security Incident. "[P]urely temporal connections are often insufficient to establish causation." *Stollenwerk v. Tri-West Health Care All.,* 254 Fed. Appx. 664, 668 (9th Cir. 2007); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) ("to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence."); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 457 (8th Cir. 2010); *Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928 (8th Cir. 2012). Instead, the "pleadings must indicate a logical connection between the two incidents." *Resnick*, 693 F.3d at 1327. Here, Plaintiff fails to demonstrate that there is a nexus between the Data Security Incident and her speculative, conclusionary damages. Plaintiff has not plead sufficient facts to support her allegations that her harms stem only from Defendant's Data Security Incident.

11

Plaintiff has not addressed whether her information was impacted in any other previous data breaches, or if her own carelessness exposed her information.

Plaintiff has not alleged facts showing actual injury. Accordingly, Plaintiff's negligence cause of action should be dismissed for failure to state a claim.

### 3. Negligence *Per Se* is not recognized under Arkansas Law

Like her negligence claim, Plaintiff's negligence *per se* claim fails because (i) under Arkansas law, violation of a statute is only evidence of negligence and does not constitute negligence *per se*; and (ii) the Federal Trade Commission ("FTC") Act does not permit a private right of action.

Plaintiff asserts a claim for negligence *per se* based upon Section 5 of the Federal Trade Commission Act, 15 U.S.C § 45, which prohibits "unfair . . . practices in or affecting commerce." Compl. ¶ 164. Plaintiff alleges Defendant violated the FTC Act by failing to use reasonable measures to protect her information and not complying with industry standards. *Id*. at ¶ 165.

Under Arkansas law, the violation of a statute does not constitute negligence *per se* – it is only evidence of negligence. *Shannon v. Wilson*, 329 Ark. 143, 158–60, 947 S.W.2d 349, 357–58 (1997). Moreover, Arkansas courts and the Eighth Circuit have recognized that the FTC Act does not provide for a private right of action for individuals. *See Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1187 (8th Cir. 1996) (holding that the FTC Act does not provide for a private right of action); *Marshall v. Conway Regional Medical Center*, 2020 WL 5746839, at * 2 (E.D. Ark. Sept. 25, 2020) (determining the FTC Act does not permit a private right of action in class action data breach lawsuit); *C.J. by and through Brady v. Truman Medical Center*, 2020 WL 4373651, at * 3 (W.D. Mo. June 25, 2020).

Further, the seminal *Holloway* decision has been adopted by the Eighth Circuit. See *Morrison*, 91 F.3d at 1187. In *Holloway v. Bristol–Myers Corp.,* 485 F.2d 986 (D.C. Cir. 1973), the court held that private actions under the FTC Act could not be maintained. After outlining the threat to government's enforcement efforts if private actions were involved, the *Holloway* court concluded that "a private right of action to enforce the Federal Trade Commission Act—however desirable or logical this might appear in the abstract—would be contrary to the legislative design which we discern to have been deliberately wrought." *Id*. at 1002.

Consequently, Plaintiff's negligence *per se* claim for violations of the FTC Act is not a viable theory of negligence that can proceed under Arkansas law, and this claim should be dismissed with prejudice.

### 4. Plaintiff Fails to State a Claim for Breach of Implied Contract

To state a claim for breach of implied contract, a plaintiff must allege facts showing that there was mutual assent and a meeting of the minds as to the terms of the alleged contract. That is a showing that Plaintiff has not—and cannot—make.

Under Arkansas law, an implied contract is "one that is inferred from the acts of the parties or from circumstances demonstrating their intention." *Pettus v. McDonald*, 343 Ark. 507, 513, 36 S.W.3d 745, 749 (2001). Both express and implied contracts require mutual assent of the parties and a meeting of the minds. *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 28, 280 S.W.3d 1, 13 (2008). Arkansas courts examine the "'presumed' intention of the parties as indicated by their conduct" when evaluating whether an implied contract exists. *Steed v. Busby*, 268 Ark. 1, 6, 593 S.W.2d 34, 38 (1980) (citing *Caldwell v. Missouri State Life Ins. Co*., 148 Ark. 474, 230 S.W. 566 (1921)).

Plaintiff asserts she was required to provide her information to Defendant to obtain banking and financial services, and that in exchange for Defendant's services, Defendant promised to protect her information. Compl. ¶¶ 174 – 175. Plaintiff further asserts Defendant "implemented written privacy policies whereby it expressly promised" to only disclose sensitive information in certain circumstances. *Id.* at ¶ 176. Plaintiff asserts that these statements form implied contracts between the parties, which Defendant breached by failing to safeguard and protect her information, allegedly causing her to suffer damages. *Id.* at ¶¶ 177 – 183.

However, Plaintiff failed to assert any facts that establish mutual assent or meeting of the minds between the parties. Plaintiff does not allege that Defendant made any specific representations to her about the precise terms of its data security program as part of their relationship or indicated an intention to be contractually bound in any other way. Plaintiff must allege something more than a unilateral understanding of this implied contract. Without a meeting of the minds, there is no enforceable contract. Further, Plaintiff's breach of implied contract claim fails to allege that Plaintiff and Class Members suffered any concrete, cognizable injuries beyond the mere future risk of injury as a result of the Data Security Incident.

Having failed to do so allege a meeting of the minds, and in the absence of sufficient factual allegations establishing a meeting of the minds, mutual assent between the parties, or any valid damages, Plaintiff's breach of implied contract claim fails and this claim should be dismissed with prejudice.

### 5. Plaintiff Fails to State a Claim for Unjust Enrichment

Under Arkansas law, unjust enrichment is an equitable doctrine. *Campbell v. Asbury Automotive, Inc.*, 2011 Ark. 157, at 21, 381 S.W.3d 21, 36 (2011). For an Arkansas court to find unjust enrichment, "a party must have received something of value, to which he or she is not

entitled and which he or she must restore" and there "must also be some operative act, intent, or situation to make the enrichment unjust and compensable." *Id*. (citing to *El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 645–46, 269 S.W.3d 362, 372 (2007)).

Here, Plaintiff alleged that she "conferred a monetary benefit on Defendant, by providing Defendant with [her] valuable Private Information." Comp. ¶ 185. Plaintiff alleges Defendant accepted the benefits conferred and Defendant should have used some of the funds to secure Plaintiff's PII. *Id.* at ¶¶ 186 – 189. Plaintiff further asserts she was unaware of Defendant's inadequate security measures and as a result, suffered damages. *Id.* at ¶¶ 192 – 193. However, Plaintiff has not conferred any benefit upon Defendant that would be unjust for Defendant to retain. Defendant provided banking and financial services in exchange for monetary compensation. *See, e.g.*, *Irwin v. Jimmy John's Franchise, LLC*, 175 F.Supp.3d 1064, 1072 (C.D. Ill. 2016) ("[Plaintiff] paid for food products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase."). As Defendant did not unjustly retain any benefits and Plaintiff did not confer any additional benefits upon Defendant, Plaintiff's unjust enrichment claim should be dismissed.

### 6. Plaintiff Fails to State a Claim for Declaratory Judgment and Injunctive Relief

The Declaratory Judgment Act allows a court in the case of an actual controversy to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. To state a claim for relief under the Declaratory Judgment Act, a plaintiff must adequately allege a dispute that is: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief

through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Plaintiffs seeks declaratory and injunctive relief in her Complaint. Compl. ¶ 195 – 200. Given that Plaintiff has only alleged conjectural or hypothetical future harm, any corresponding claim for declarative and injunctive relief would be similarly speculative in nature. Plaintiff's request for forward-looking changes would have no impact because the Data Security Incident already occurred over one (1) year ago. Plaintiff failed to demonstrate that she is at risk of any imminent and substantial harm, nor have she identified any "forward-looking" injunctive relief that would prevent any such harm to her. Plaintiff has not and cannot establish that "… a risk of harm is sufficiently imminent and substantial." *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (internal citations omitted). As such, Plaintiff has failed to state a claim upon which relief can be granted, and this cause of action should be dismissed.

### C. Alternatively, Immaterial and Impertinent Allegations Should be Stricken

If the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case.

Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) should be granted "when the pleading to be stricken has no possible relation to the controversy." *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (noting that district courts have liberal discretion to strike "from any pleading any insufficient defense or redundant, immaterial, impertinent, or scandalous matter"); *Henderson v. School District of Springfield R-12*, 2021 WL 5397475 (W.D. Mo. Nov. 17, 2021) (granting

defendant's Rule 12(f) motion to strike immaterial and impertinent statements that only argued or attempted to advance the political or philosophical ideologies of plaintiffs).

Instead of focusing solely on the relevant Data Security Incident and Plaintiff's individual experiences, Plaintiff added extraneous material concerning the actions of identity thieves and statistics about cybercrime. *See* Compl. ¶¶ 48 – 113. Plaintiff pled no actual facts regarding the motivations of the cybercriminals who executed the attack on Defendant beyond conclusory and speculative suppositions. To make up for that missing information, Plaintiff includes immaterial and generalized allegations that are designed to improperly inflame the issues and lend weight to the alleged risk of future identity theft. Plaintiff should limit the Complaint to Defendant's data incident and her individual experiences, and the Court should strike paragraphs 48 – 113 pursuant to Rule 12(f).

### IV. Conclusion

For all the foregoing reasons, Defendant Happy State Bank respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the event the Court does not dismiss the Complaint, Defendant respectfully requests that it strike paragraphs 48 – 113 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Date: March 25, 2024

By: /s/ Martha Ayres
Martha Ayres, Ark. Bar No. 2012233
**TABLE LAW, PLLC**
10201 W. Markham Street
Suite 311
Little Rock, AR
Tel: (501) 491-0300
Email: Martha@tablelaw.com

**MULLEN COUGHLIN LLC**
James Monagle*
309 Fellowship Rd, Suite 200
Mt. Laurel, NJ 08054
jmonagle@mullen.law

*Attorneys for Defendant Centennial Bank d/b/a Happy State Bank*

*\*Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: /s/ Martha Ayres
Martha Ayres, Ark. Bar. No. 2012233

18